# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

CLIFFORD CHARLES FOWLER, )
Register No. 166478, )
 )
          Plaintiff, )
 )
          v. )    No. 05-4212-CV-C-NKL
 )
LARRY CRAWFORD, et al., )
 )
          Defendants. )

## ORDER

Before this Court are the motions of plaintiff Clifford Fowler and defendants Larry Crawford, Steve Long, Dave Dormire, Arthur Wood, Joe Gibson, and the Missouri Department of Corrections seeking summary judgment. Responses and reply suggestions to the motions have been filed by both plaintiff and defendants.

*Motion to Strike*

In response to plaintiff's reply suggestions and exhibits in support of summary judgment, defendants have filed a motion to strike plaintiff's Exhibits 1 through 4. Defendants argue that such exhibits were not properly disclosed to defendants prior to their filing and that the exhibits do not satisfy the requirements of Rule 56, Federal Rules of Civil Procedure. Plaintiff has filed suggestions in opposition, stating Exhibits 1 through 4, which reflect the policies of the Federal Bureau of Prisons and other state prison systems on sweat lodges, are freely available to the public on the Federal Prison Bureau website and various state equivalents. Plaintiff argues that such exhibits were not under his possession, custody or control; rather, they were equally available to all parties had defendants opted to conduct basic investigative work in this case. Plaintiff further argues that the exhibits are of the nature that the court can take judicial notice under Rule 201, Federal Rules of Evidence.

The court may take judicial notice at any stage in the proceedings regarding facts that are not reasonably subject to dispute or are generally known or capable of accurate and ready

determination. Fed. R. Evid. 201. The exhibits submitted by plaintiff in his reply suggestions in support of summary judgment are of such a nature that they are susceptible to judicial notice. The information provided by the exhibits is from federal and state prisons; therefore, it is capable of accurate and ready determination, if necessary, and is not reasonably subject to dispute. Further, although not disclosed prior to the summary judgment stage in the proceedings, this court finds no prejudice to defendants. Plaintiff has complied with discovery and disclosure in this case. Defendants have been on notice that the claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) involve the least restrictive means test which involves a determination as to whether there are alternatives available to accommodate plaintiff's request for use of a sweat lodge, to which, arguably, accommodations made by other prisons could be relevant. In plaintiff's motion for summary judgment, he specifically argues that federal prisons and other state prisons allow sweat lodges; thus, although supporting exhibits were not attached, defendants were clearly put on notice and, in fact, responded in opposition to such argument, stating that accommodation at other institutions is not relevant to accommodation at Jefferson City Correctional Center (JCCC). Additionally, the exhibits submitted by plaintiff were obtained from state or federal entities, which have made the information available to the public on the Internet; thus, defendants had ready access to obtain the information. Based on the foregoing, defendants' motion to strike plaintiff's Exhibits 1 through 4 is denied.

*Summary Judgment*

In support of his claims seeking summary judgment and injunctive and declaratory relief under 42 U.S.C. § 1983, plaintiff states defendants have denied him the use and construction of a sweat lodge, in violation of RLUIPA. Plaintiff states use of a sweat lodge is a central tenet of his Native American religion, and that defendants' denial is based upon exaggerated security concerns.

In support of their motion for summary judgment, defendants state that accommodating a sweat lodge at JCCC, a maximum security institution, is a threat to safety and security within the prison and would adversely impact prison staff, other inmates and prison resources. Defendants state that institutional security is the most compelling governmental interest in a

prison setting and that based on the legitimate safety and security concerns associated with a sweat lodge, denial of use of a sweat lodge is the least restrictive means of ensuring prison safety and security. Defendants argue that denial of use of a sweat lodge does not violate plaintiff's First Amendment rights or RLUIPA.

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

*Facts*

Plaintiff Clifford Fowler is an inmate at JCCC. JCCC is a level 5 maximum security institution that currently houses 1,973 adult offenders. Offenders at Missouri level 5 maximum security institutions such as JCCC are incarcerated there because they have committed serious

felonies; have committed a violent act while incarcerated; or are considered a security risk based on past records. Plaintiff is incarcerated for murder in the second degree and is serving a life sentence without the possibility of parole.

Plaintiff is of Cherokee descent and practices the Native American faith. Defendants do not challenge the sincerity of his religious beliefs. Plaintiff is part of the Native American religious group at JCCC, consisting of approximately six members. The Native American group is allowed access to the chapel for meetings twice weekly for two hours, at which they relay oral traditions and sing ceremonial songs, and have access to drums and other religious items, including a buffalo skull. Individual members of the Native American religious group are also afforded Native American spiritual items for individual personal religious use, such as a pipe, approved tobacco blend, a medicine bag, herbs, head band, feathers and a dream catcher. Plaintiff, as a part of the Native American religious group, is also allowed to wear his hair long, as part of his spiritual beliefs. There is currently no Native American volunteer-in-corrections (VIC) to supervise or lead Native American groups at JCCC.

Plaintiff has sought additional spiritual accommodations at JCCC, including a request for an outdoor area for Native American religious use, to enable Native Americans to have direct contact with the earth during prayer and the opportunity to burn sacred plants, see Offender Grievance No.04-651, dated Dec. 27, 2004, and Offender Grievance Appeal, dated Jan. 18, 2005, and use of and construction of a sweat lodge. See Offender Grievance No. 04-649, filed Dec. 27, 2004.

The use of a sweat lodge is a central tenant of the Native American religion. This is not disputed by defendants. A sweat lodge is a dome structure, constructed with 14 to 16 feet willow poles, measuring one and one-half inches in diameter, set in the ground and then bent over so that the poles attach to the poles on the opposing side of the dome. When constructed, the dome measures four feet tall, and eight to ten feet across, and can accommodate between 12 to 15 inmates. The willow structure is a permanent structure that needs to be replaced approximately every four years.

To set up for a sweat lodge ceremony, the willow dome is covered with blankets and/or tarpaulins. Firewood is used to start a fire. Thirty to forty rocks, the size of cantaloupes, are

heated in the fire by participating inmates, outside the lodge, and then are picked up with a shovel and taken to the doorway of the sweat lodge where they are picked up with deer antlers and set in the sweat lodge. A large bucket is used inside the sweat lodge to pour water over the rocks, producing steam. Once inmates are inside the lodge, there are four rounds which last from thirty minutes to an hour. During these rounds, the sweat lodge door is closed fifteen to twenty minutes of each round. An inmate participating in the sweat ceremony would be required to wear shorts or a towel wrapped around the lower half of his body. The typical sweat lodge ceremony would last six to seven hours from beginning to end.

Plaintiff's request for a sweat lodge has been denied by JCCC authorities. However, JCCC authorities state they are currently in the process of creating a separate, fenced, outdoor area to be used exclusively by the Native American religious group for their twice-weekly meeting times.

*First Amendment Claim*

Plaintiff's response to defendants' motion for summary judgment provides, in footnote 1, that he does not oppose defendants' motion as it pertains to any First Amendment claims. Under the First Amendment, reasonable restrictions may be placed on an incarcerated individual's religious practices. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987). Therefore, summary judgment is granted in favor of defendants on plaintiff's First Amendment claims.

*Religious Land Use and Institutionalized Persons Act (RLUIPA) Claim*

Title 42 U.S.C. § 2000cc-a(a)(1)-(2) provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest" and does by the "least restrictive means." Cutter v. Wilkinson, 544 U.S. 709, 712 (2005). This section applies to any program receiving Federal financial assistance. Id. at 715-16. Every state, including Missouri, accepts federal funding for its prisons. Id., n.4. Thus, section 2000cc-a(a)(1)-(2) is applicable to plaintiff's claims in the instant case.

Before enacting the standards set forth in RLUIPA, Congress enacted the Religious Freedom and Restoration Act (RFRA) to secure redress for inmates who encountered undue

5

barriers to their religious observances. Id. at 716-17. RFRA was invalidated as applied to the states in City of Boerne v. Flores, 521 U.S. 507, 515-16 (1997), because it lacked a Commerce Clause underpinning or Spending Clause limitation to recipients of federal funds. Cutter v. Wilkinson, 544 U.S. at 715. In response to City of Boerne v. Flores, Congress enacted RLUIPA and specifically invoked federal authority under the Spending and Commerce Clauses, thus ensuring applicability to the states. Cutter v. Wilkinson, 544 U.S. at 715. RLUIPA carried forward the "compelling governmental interest"/"least restrictive means" standard originally set forth in RFRA. Id. at 714-15, 722-23. Also carried forward with the standard was the application of "due deference to the experience and expertise of prison and jail administrators," by the courts in reviewing religious accommodation for prisoners. Id. at 723.

In Cutter v. Wilkinson, the Supreme Court upheld RLUIPA as constitutional, finding that it did not violate the Establishment Clause of the First Amendment as asserted by some courts. 544 U.S. at 709. The court held that RLUIPA alleviates exceptional government-created burdens on private religious exercise, but does not establish unyielding interests of religious accommodation over other interests, such that it would violate the Establishment Clause. Id. The Court held that the same due deference to prison and jail administrators in establishing necessary regulations and procedures to maintain order and security, as was provided under RFRA, was also applicable under RLUIPA. Id. at 723. The Court stated "[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." Id. at 722 "[A]ccommodation must be measured so that it does not override other significant interests." Id. RLUIPA is to be applied in an appropriately balanced way, with particular sensitivity to security concerns. Id. While RLUIPA adopts a "compelling governmental interest" standard, "context matters" in the application of that standard. Id. at 722-23. The Act anticipates the courts will apply the standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id. at 723.

6

In Pounders v. Kempker, 79 Fed. Appx. 941 (2003), the Eighth Circuit held that the application of RFRA in Hamilton v. Schriro, 74 F.3d 1545 (8th Cir. 1996), to prisoner's sweat lodge claim was instructive on prisoner's sweat lodge claims under RLUIPA. In a subsequent opinion, the Eighth Circuit specifically stated that the standard applied in RFRA is the same standard to be applied in RLUIPA cases. Murphy v. Missouri Dept. of Corr., 372 F.3d 979 (8th Cir. 2004). These Eighth Circuit holdings are consistent with Cutter v. Wilkinson, 544 U.S. at 709.

The case of Hamilton v. Schriro, 74 F.3d 1545 (8th Cir. 1996), applied the RFRA in support of denial of a sweat lodge to a prisoner at the Missouri Department of Corrections maximum security prison in Potosi. The court held that while the denial of a sweat lodge to a prisoner practicing the Native American religion at the maximum security institution in Potosi did substantially burden the exercise of the prisoner's Native American religion, such denial was the least restrictive means of achieving the prison's compelling interest in safety and security. Id. at 1554. The court stated that the test of the least restrictive means/compelling state interest, when applied in the prison setting, must give due deference to expert judgment of prison officials in making appropriate limitations to maintain institutional security. Id. at 1553. The court cited Pell v. Procunier, 417 U.S. 817, 822 (1974), for the proposition that in the absence of substantial evidence in the record to indicate exaggeration by officials, courts should ordinarily defer to prison officials' expert judgment on matters involving the peculiar restrictive circumstances of penal confinement. Hamilton v. Schriro, 74 F.3d at 1553. The court, while recognizing that restrictions on religious accommodation should be no greater than necessary (least restrictive), noted that even with "heightened" standard of review under RFRA, due deference to prison expertise of prison officials is necessary. Hamilton v. Schriro, 74 F.3d at 1554. The court cited institutional security and safety as central to all other corrections goals and the highest penological concerns. Id.

The facts in the instant case are virtually identical to those in Hamilton v. Schriro, and as set forth above, the analysis is also the same.

Defendants do not challenge the central importance of a sweat lodge to the Native American religion; rather, defendants cite unique security concerns that arise with a sweat

7

lodge as the basis for denial of such accommodation to Native American religious group members. Under RLUIPA, defendants must show that the prison policies and regulations restricting use or construction of a sweat lodge are the least restrictive means of achieving a compelling state interest. There is no dispute that prison safety and security are compelling state interests.

*MDOC's Compelling State Interests*

MDOC defendants Steve Long, Assistant Division Director for the Division of Adult Institutions, and Arthur Wood, JCCC Associate Superintendent, have provided evidence in the form of affidavits setting forth the unique safety concerns associated with a sweat lodge. Specifically, the affidavits provide that in maximum security institutions, such as JCCC, where prisoners of heightened security risk based on their crimes committed, violent acts while incarcerated, or security concerns based on past record, are housed, the construction and use of a sweat lodge creates unique security and safety concerns within the institution. MDOC officials state incidents of violence are known to occur at religious call-out times, with heightened risk in religious groups, such as the Native American group, which do not have regular VIC's leading the groups. MDOC officials set forth evidence that the sweat lodge ceremony involves offenders gathering in an enclosed area screened from view of those outside the lodge, and during which offenders tend a fire, handle firewood and large rocks, create hot steam and use tools, including shovels, and that these characteristics pose security risks. MDOC officials state that a sweat lodge's unique characteristics substantially heighten concerns regarding risk of assault against staff and among offenders, risk of sexual misconduct among offenders, risk of offenders planning organized disobedience against staff, risk that smoke from the sweat lodge being used to mask the odor of illicit substances, and risk regarding fire and heat-related safety concerns.

Plaintiff's argument that the safety concerns cited by MDOC officials are exaggerated and do not support the restriction on sweat lodges has been determined by the Eighth Circuit to be unfounded. The Eighth Circuit, in Hamilton v. Schriro, 74 F.3d at 1551, held that prohibiting inmates from meeting in a completely enclosed area is rationally connected to preventing the type of harm prison officers fear would occur in a sweat lodge. Almost

8

identical evidence of safety and security concerns as that provided in Hamilton has been provided in this case.

Plaintiff has come forward with evidence that MDOC has previously accommodated a sweat lodge at the Potosi Correctional Center, and that federal prisons and some state prisons accommodate sweat lodges. This evidence, other than that concerning Potosi, was also presented in Hamilton and was held by the Eighth Circuit as insufficient to counter the evidence about security concerns submitted by MDOC prison officials. The evidence provided by plaintiff as to accommodation by MDOC at Potosi and by other federal and state prison institutions, while persuasive on the issue of accommodation, fails to provide evidence sufficient to counter the required deference given to the expert judgment of prison officials. See id. See also Pounders v. Kempker, No. 2:02CV49-DJS (E.D. Mo. 2004) (on remand from the Eighth Circuit, citing Hamilton in support of judgment finding legitimate security concerns justify denial of sweat lodge, no violation of RLUIPA).

Based on the precedent of this Circuit, and defendants' evidence, there is no dispute of material fact that MDOC's restriction on a sweat lodge is supported by the state's compelling state interest in safety and security.

*Least Restrictive Means*

Because there is a compelling state interest, the next issue under RLUIPA is a determination as to whether the denial of a sweat lodge in its entirety is the least restrictive means of achieving the state's compelling interest in safety and security within the prison. Plaintiff argues that defendants' safety and security concerns associated with the construction and use of a sweat lodge could be alleviated if MDOC carefully screened maximum security inmates prior to allowing them access to the sweat lodge; if participants in a sweat ceremony exit the sweat lodge every thirty minutes; and if a volunteer could participate in the sweat ceremony. Despite such assertions, however, the evidence does not support that these restrictions would significantly and/or adequately reduce or remove the safety and security concerns defendants have with the unique nature of the sweat lodge ceremony. Defendants state that based on their experience and expertise, the unique safety and security concerns of a sweat lodge ceremony which arise from the completely dark enclosure in which prisoners are

9

unsupervised for periods of up to thirty minutes at a time, and have access to items such as shovels, fire, hot rocks, deer antlers, etc., are not alleviated by plaintiff's suggestions. Further, plaintiff's assertion that security and safety concerns associated with a sweat lodge could be minimized by means of a Native American prison volunteer who could assist with supervision of the fire and within the sweat lodge during the sweat ceremony, is not supported by the evidence. Plaintiff has provided no evidence that such volunteer is available. Rather, the evidence is to the contrary; currently the Native American religious group at JCCC does not even have a Native American VIC to supervise or lead the Native American religious group's biweekly services at JCCC.

Plaintiff's request for a sweat lodge has been an all-or-nothing accommodation request. Plaintiff specifically requests full use of a sweat lodge at least 17 times a year. Defendants have set forth evidence that they have tried to accommodate other alternative religious requests of plaintiff, but that they are unable to accommodate his all-or-nothing request for a sweat lodge. Defendants state they are in the process of constructing an exclusive fenced area for the Native American religious group for purposes of allowing the group to conduct outdoor religious services, as was requested by plaintiff in an Internal Resolution Request (IRR) form submitted to MDOC officials. Defendants state, however, that despite such accommodation, plaintiff asserts that he cannot utilize the outdoor area without being given access to a sweat lodge. In Pounders v. Kempker, No. 2:02CV49-DJS (E.D. Mo. 2004), on remand from the Eighth Circuit, the Eastern District of Missouri held that prisoner's all-or-nothing request for a sweat lodge was not subject to change, and thus, prisoner failed to come forward with any evidence that there were any less restrictive alternatives to a total ban on sweat lodges.

Based on plaintiff's assertion of an all-or-nothing religious accommodation for full access to a sweat lodge, and refusal to accept alternative accommodation by MDOC officials, there is no dispute of material fact as to whether a less restrictive means is available. Plaintiff has come forward with no evidence to support his claim that there are less restrictive means of achieving prison safety and security, other than completely prohibiting the sweat lodge ceremony.

*Conclusion*

Based on the precedent of this Circuit, there is no dispute of material fact which would require a trial in this matter. Although the denial of a sweat lodge is a substantial burden on plaintiff's exercise of his Native American religion, Eighth Circuit precedent demonstrates that defendants' denial of a sweat lodge to plaintiff is in furtherance of a compelling governmental interest in safety and security in maximum security prisons and is currently the least restrictive means to ensure such safety and security. Taking the facts most favorable to plaintiff, no reasonable judge could distinguish this case from <u>Hamilton v. Schriro</u>, which held that denial of a sweat lodge at the maximum security prison in Potosi was permissible. Further, the <u>Hamilton</u> decision has been affirmed in Missouri by the Eastern District of Missouri in <u>Pounders v. Kempker</u>, No. 2:02CV49-DJS (E.D. Mo. 2004), which applied the precedent of <u>Hamilton</u> to its decision that denial of a sweat lodge to a Missouri prisoner did not violate the First Amendment of the Constitution or RLUIPA. Defendants are entitled to judgment on plaintiff's claims as a matter of law.

IT IS, THEREFORE, ORDERED that defendants' motion to strike is denied. [101] It is further

ORDERED that plaintiff's motion for summary judgment is denied. [91] It is further

ORDERED that defendants' motion for summary judgment is granted and plaintiff's claims are dismissed. [88]

          s/ Nanette K. Laughrey
          NANETTE K. LAUGHREY
          United States District Judge

Dated: July 23, 2007
Jefferson City, Missouri